# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41406

United States Court of Appeals
Fifth Circuit

**FILED**
January 18, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

JAIME CHAVEZ,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:16-CR-485-1

Before SMITH, BARKSDALE, and HIGGINSON, Circuit Judges.

PER CURIAM:*

    Jaime Chavez challenges being sentenced to 168 months' imprisonment, stemming from his guilty plea to importing over 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1), and 18 U.S.C. § 2. Primarily at issue is whether the court clearly erred in denying a mitigating-role adjustment under Sentencing Guideline § 3B1.2. AFFIRMED.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 16-41406

I.

In March 2016, Chavez attempted to enter the United States at Anzalduas, Texas, in a vehicle he purchased two weeks earlier for $8,897.47. In his initial contact with Customs and Border Patrol Agents, he presented a valid California birth certificate, stating he was visiting his girlfriend in Mexico. Nevertheless, during this initial encounter, agents became aware of his two prior drug-trafficking-related arrests in May 2000 and November 2015.

At a secondary inspection area, agents found a secret compartment behind the rear-passenger seat, containing 41 packages of methamphetamine, weighing 42.86 kilograms. Chemical testing revealed the drugs had a 97.2% purity level, making them "Ice" for sentencing purposes, a mixture of methamphetamine hydrochloride of at least 80% purity. U.S.S.G. § 2D1.1(c)(1).

Other than pleading guilty, Chavez signed an acceptance-of-responsibility letter. In it, he stated that, although he "knew the vehicle contained illegal drugs", he: "did not know the exact quantity or type of narcotics [he] was transporting"; "was going to be paid to import the drugs"; and was "not the owner of" them.

In addition to noting arrests for, *inter alia*, taking a motor vehicle without consent, receiving stolen property, possessing burglary tools, possessing a concealed weapon, conspiracy to commit robbery, assault with a deadly weapon, and possessing drug paraphernalia, the presentence investigation report (PSR) noted Chavez' two prior drug-trafficking-related arrests. It stated: in May 2000, he attempted, unsuccessfully, to enter the United States through California "in a vehicle laden with 13.80 kilograms of marijuana"; and, in November 2015, four months before his arrest for the instant offense, he was arrested and charged with three counts after California highway patrol officers found a hidden compartment in his vehicle,

2

"contain[ing] 12 packages of plastic wrapped United States currency in the amount of $215,000".

The PSR did not recommend a mitigating-role adjustment, because, *inter alia*:  Chavez "ha[d] yet to speak of his involvement in the instant offense"; there was, therefore, "no information to suggest that [his] role [was] worthy of a mitigating or aggravating role adjustment"; but, "he did take affirmative actions to commit this offense", and "his role as a transporter [was] vital to the flow of the narcotics from the source in Mexico to its final destination in the United States".

Although Chavez answered affirmatively when asked at sentencing whether the facts provided in the PSR were correct, he objected to its not recommending a mitigating-role adjustment.  In his written objections, he had asserted he was entitled to such an adjustment because:  "his role was limited to attempting to transport narcotics"; "he was unaware of the type and/or quantity of the narcotics he was transporting"; and, "although [he] was going to be paid for transporting the methamphetamine, he had no financial interest in the narcotics".

At Chavez' sentencing hearing, his lawyer again moved for the adjustment.  He asserted, *inter alia*:  Chavez was "acting in the role of a mule"; and he was "really in the bottom of the totem pole because obviously the people that owned the drugs and the people that received the drugs . . . are far more higher up in terms of being involved".  The court responded:  "Doesn't he seem like an average participant? . . . [H]e may be even more involved given he's . . . driving drug proceeds . . . and then he's got the . . . [May 2000] case where he's doing what he [was] doing here, crossing the bridge with drugs in his vehicle attempting to bring them into this country".

After stating it would "consider everything [counsel] said", the court advised Chavez of his right to allocution.  Upon Chavez' apologizing for "being

No. 16-41406

involved in this kind of case", the court reminded him it was "not [his] first time". Chavez denied both involvement in drug trafficking and knowledge of the money in his vehicle's secret compartment when he was arrested in November 2015.

The court adopted the PSR's findings and application of the Guidelines. In denying the adjustment, the court stated that, consistent with the PSR, it "d[id not] see a [mitigating] role . . . in this case [] given [Chavez'] extensive involvement[] in drug trafficking".

Because Chavez admitted to importing over 40 kilograms (nine times the 4.5 kilogram minimum for "Ice"), his base-offense level was 38. U.S.S.G. § 2D1.1(c)(1). He received an additional two levels because he knew he was importing methamphetamine and was not subject to a mitigating-role adjustment. U.S.S.G. § 2D1.1(b)(5). The court reduced the base-offense level by three points for acceptance of responsibility and two points pursuant to the safety-valve provision. U.S.S.G. § 5C1.2. Chavez' criminal history category of I and total-offense level of 35 yielded a Guidelines sentencing range of 168 to 210 months' imprisonment, with his being sentenced at the bottom of that range.

## II.

Chavez challenges his sentence in two ways. First, he contends the court clearly erred in denying him a mitigating-role adjustment under Guideline § 3B1.2. Along that line, he contends: the court relied impermissibly on his arrests in 2000 and 2015; and remand is necessary because the court did not articulate a permissible factual basis for denying his mitigating-role adjustment, as required by *United States v. Melton*, 930 F.2d 1096, 1099 (5th Cir. 1991). Second, Chavez asserts there is plain error, concerning a due-process violation, in the court's sentencing him based on "bare arrest records and pure speculation".

4

No. 16-41406

Although *post-Booker,* the Guidelines are advisory only, the district court must avoid significant procedural error, such as improperly calculating the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 48–51 (2007). If no such procedural error exists, a properly preserved objection to an ultimate sentence is reviewed for substantive reasonableness under an abuse-of-discretion standard. *Id.* at 51; *United States v. Delgado-Martinez*, 564 F.3d 750, 751–53 (5th Cir. 2009). In that respect, for issues preserved in district court, its application of the Guidelines is reviewed *de novo*; its factual findings, only for clear error. *E.g., United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

## A.

Guideline § 3B1.2 provides for a mitigating-role adjustment of four levels "[i]f the defendant was a minimal participant in any criminal activity"; two levels, "[i]f the defendant was a minor participant"; and three levels, "[i]n cases falling between" minimal and minor. U.S.S.G. § 3B1.2. These adjustments are available only "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity". U.S.S.G. § 3B1.2 cmt. 3(A). In deciding whether to grant such a reduction, the court considers the "totality of the circumstances", along with five "non-exhaustive" factors centering on the degree to which the defendant is involved relative to other participants in the crime charged. U.S.S.G. § 3B1.2 cmt. 3(C); *see also United States v. Sanchez-Villarreal*, 857 F.3d 714, 719–21 (5th Cir. 2017) (discussing amendments to commentary and holding amendments incorporating five factors are retroactive).

Chavez "has the burden to show that he is entitled to the adjustment". *Sanchez-Villarreal*, 857 F.3d at 721. Whether he is entitled to one is a factual determination, reviewed for clear error. *Id.* "A factual finding is not clearly

5

No. 16-41406

erroneous if it is plausible in light of the record read as a whole." *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005).

1.

Chavez asserts the court clearly erred in denying the adjustment, because, *inter alia*: his role was limited to transporting the drugs as a "mule"; he did not know the type, or quantity, of the drugs; he was not responsible for planning or organization; and he lacked any interest in the drugs. This assertion fails for many reasons. As noted, he has the burden to prove he is "substantially less culpable than the average participant". U.S.S.G. § 3B1.2 cmt. 3(A); *Sanchez-Villarreal*, 857 F.3d at 721; *United States v. Torres-Hernandez*, 843 F.3d 203, 207 (5th Cir. 2016).

First, Chavez presented very little, if any, evidence of other participants, a requirement for a mitigating-role adjustment. U.S.S.G. § 3B1.2 cmt. 2 ("This guideline is not applicable unless more than one participant was involved in the offense."). Along that line, the "evidence" is his signed acceptance-of-responsibility letter, in which he stated he "did not know the exact quantity or type of narcotics [he] was transporting", "was going to be paid", and "[was] not the owner of the drugs". These statements are insufficient to overcome his burden. U.S.S.G. § 3B1.2 cmt. 3(A).

Second, Chavez ignores significant, independent factors negating the adjustment. He attempted to enter the United States alone in his vehicle; the record does not reveal the existence of any other participant. He purchased the vehicle, for approximately $9,000, just two weeks before attempting to smuggle drugs into the United States, enough time for the vehicle to be equipped with an elaborate hidden compartment.

As noted, the PSR, adopted by the court, stated "[Chavez'] role as a transporter [was] vital to the flow of the narcotics". Although this factor alone is insufficient to deny a mitigating-role adjustment, *Sanchez-Villarreal*, 857

6

No. 16-41406

F.3d at 722, his "vital" or "critical" role weighs against affording him such relief, *United States v. Bello-Sanchez*, 872 F.3d 260, 265–66 (5th Cir. 2017). In that regard, the eleventh circuit has ruled that, "in the drug courier context, . . . the amount of drugs imported is a material consideration in assessing a defendant's role". *United States v. Rodriguez De Varon*, 175 F.3d 930, 943 (11th Cir. 1999); *see also United States v. Gonzalez-Rodriguez,* 621 F.3d 354, 358 (5th Cir. 2010) (estimated street value of 142 kilograms of "extremely high quality" "Ice" was between $10 to $40 million).

Finally our precedent forecloses Chavez' assertion the court clearly erred. In *Torres-Hernandez*, our court affirmed the denial of a mitigating-role adjustment where the defendant, along with five others, was apprehended crossing the United States-Mexico border with bundles of marijuana on his back. 843 F.3d at 204. Our court noted a district court finds whether a defendant is "substantially less culpable than the average participant" "only by reference to his or her co-participants in the case at hand". *Id.* at 207, 209. In that case, "[t]he only evidence in the record regarding the participation of others . . . pertain[ed] to the other individuals who had transported the drugs on their respective backs". *Id.* at 209. It followed, "Torres-Hernandez was no more or less culpable than the other transporters. He did not offer any evidence as to the participation, or expected participation, of others involved in the growing, further transportation, or intended sale of this marijuana". *Id.*

Our court affirmed a denial of a mitigating-role adjustment in *Bello-Sanchez*, finding no clear error when the defendant offered far more evidence of others' involvement than does Chavez. 872 F.3d at 262, 266. Bello-Sanchez offered evidence she met with an unindicted co-conspirator who took a picture of her, saved a number in Bello-Sanchez' cell phone under the name "Brenda Zumba", and told her someone would be waiting on the United States side of

the border. *Id.* at 262. While in custody, Bello-Sanchez received several missed calls from "Brenda Zumba". *Id.*

Here, the PSR, adopted by the court, correctly noted that, because Chavez did not "speak to his involvement in the instant offense", "there is no information to suggest that [his] role is worthy of a mitigating . . . role adjustment". Even if we infer the existence of other participants, Chavez, as in *Torres-Hernandez*, "did not offer any evidence as to the participation, or expected participation, of others". 843 F.3d at 209.

2.

Chavez contends the court erred in "relying" or "focusing" on his 2000 and 2015 arrests when denying the adjustment because these arrests were "unrelated" and "uncharged". The Government asserts correctly that, although Chavez objected to the denial of a mitigating-role adjustment, he did not object to the court's references to these arrests. Other than denying knowledge of the $215,000 hidden in his vehicle's secret compartment in 2015, Chavez did not object to the court's repeated references to his previous involvement in drug trafficking.

Because Chavez did not adequately raise this issue in district court, review is only for plain error. *E.g.*, *United States v. Broussard*, 669 F.3d 537, 546 (5th Cir. 2012). Under that standard, Chavez must show a forfeited plain (clear or obvious) error that affected his substantial rights. *E.g.*, *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he does so, we have the discretion to correct the reversible plain error, but generally should do so only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings". *Id.*

There was no clear or obvious error in the court's referring to the two arrests. It is not obvious the court "focused" or "relied" on them. The court discussed the arrests in responding to Chavez' assertion that he made a

No. 16-41406

mistake in committing the offense. In addition, the court adopted the PSR, which, as discussed *supra*, noted his lack of evidence as to others' participation. As also shown *supra*, there are many factors weighing against a mitigating-role adjustment; his prior involvement in drug trafficking was but one factor in his not meeting his burden.

Moreover, even if the court "focused" on Chavez' prior arrests, that did not constitute the requisite plain (clear or obvious) error. The Sentencing Guidelines' commentary requires courts look to the "totality of the circumstances". U.S.S.G. § 3B1.2 cmt. 3(C). It is not obvious his prior drug-trafficking arrests do not fall within the totality-of-the-circumstances analysis.

3.

Chavez contends, for the first time on appeal, that the court did not articulate a permissible factual basis for denying the adjustment, as required by *Melton*, 930 F.2d at 1099. Review is only for plain error. There was no clear or obvious error because "the rule in *Melton* is limited to cases in which the defendant 'requested that the court articulate the factual basis for the court's finding and the reasons for refusing the reduction'". *Bello-Sanchez*, 872 F.3d at 266 (quoting *Melton*, 930 F.2d at 1099). Chavez did not make such a request.

B.

For his second issue, Chavez asserts that, for the 2000 and 2015 arrests, the court violated due process in sentencing him based on bare arrest records and pure speculation. But, as he concedes, because he did not so object in district court, review is only for plain error. *E.g.*, *Broussard*, 669 F.3d at 546.

There was no clear or obvious error with respect to this due-process claim. Although "a district court may not rely on a 'bare arrest record' at sentencing", "[a]n arrest record is 'bare' when it refers . . . 'to the mere fact of an arrest—*i.e.*[,] the date, charge, jurisdiction and disposition—without corresponding information about the underlying facts or circumstances

regarding the defendant's conduct that led to the arrest'". *United States v. Windless*, 719 F.3d 415, 420 (5th Cir. 2013) (quoting *United States v. Harris*, 702 F.3d 226, 229 (5th Cir. 2012)).

Under the *Windless* definition, the arrest records were not "bare". *Id.* For the November 2015 arrest, the PSR provided a detailed explanation of, *inter alia*: why Chavez was stopped and searched, the car he was driving, how the secret compartment was discovered, and the amount of cash in the secret compartment. Although the May 2000 arrest is less detailed in the PSR, it relied on a report from the Department of Homeland Security. The record reflects the vehicle was "laden with 13.80 kilograms of marijuana at a port of entry in California". It is certainly not obvious Chavez' due-process rights were violated.

In the alternative, for the substantial-rights prong of plain-error review, even assuming, *arguendo*, the court plainly erred in considering "bare" arrest records, such consideration did not affect Chavez' substantial rights. Reliance on "bare" arrest records in sentencing affects a defendant's substantial rights only when he "demonstrate[s] a reasonable probability that he would have received a lesser sentence but for the court's consideration of his 'bare' arrest record". *United States v. Johnson*, 648 F.3d 273, 282 (5th Cir. 2011) (quoting *United States v. Williams*, 620 F.3d 483, 496 (5th Cir. 2010)).

As discussed *supra*, the arrests in 2000 and 2015 were but one factor in the court's denying the adjustment. There were many "significant, permissible factors" weighing against concluding he met his burden to show he was substantially less culpable than the average participant. *Williams*, 620 F.3d at 495.

### III.

For the foregoing reasons, the judgment is AFFIRMED.