**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4639

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUAN ALBERTO GUERRERO-DELEON,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Spartanburg.  J. Michelle Childs, District Judge.  (7:15-cr-00850-JMC-2)

Argued:  October 26, 2017                              Decided:  November 14, 2017

Before WILKINSON, MOTZ, and HARRIS, Circuit Judges.

Affirmed by unpublished opinion. Judge Wilkinson wrote the opinion, in which Judge Motz and Judge Harris joined.

**ARGUED:** Joshua Snow Kendrick, KENDRICK & LEONARD, P.C., Greenville, South Carolina, for Appellant.  Andrew Burke Moorman, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.   **ON BRIEF:** Beth Drake, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

Juan Alberto Guerrero-Deleon pled guilty both to conspiring to possess with the intent to distribute and to conspiring to distribute at least 500 grams of a substance containing methamphetamine. He now appeals his sentence on the ground that the district court erred in denying him a reduction for his minor role as a courier in the conspiracy. We disagree and accordingly affirm Guerrero-Deleon's sentence.

I.

Arecio Suazo-Molina agreed to sell two pounds of methamphetamine to a confidential informant for $19,500. That total comprised a base price of $18,500 plus a $1000 transportation fee. Suazo-Molina agreed to meet the informant at a local Denny's restaurant and told the informant that he would be accompanied by another person. Suazo-Molina arrived at the Denny's in a van with appellant Juan Alberto Guerrero-Deleon. They were thereupon approached by law enforcement, and a search of the van turned up approximately two pounds of methamphetamine.

Both men were arrested and agreed to be interviewed by law enforcement. Guerrero-Deleon said that Suazo-Molina had offered to pay him $1000 to help with a drug delivery. He recounted a conversation he had overheard between Suazo-Molina and two men from Texas in which Suazo-Molina had requested two pounds of methamphetamine for a customer. Guerrero-Deleon explained that one of the men from Texas was called "Tio." Suazo-Molina, meanwhile, indicated that Guerrero-Deleon had approached him about the drug delivery as well as the delivery fee.

2

Guerrero-Deleon pled guilty to conspiracy to possess with intent to distribute and conspiracy to distribute 500 grams or more of a substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The presentence report calculated a total offense level of 25, a criminal history category of I, and an advisory guidelines range of 57 to 71 months.[1] Guerrero-Deleon objected that he was entitled to an offense level reduction pursuant to U.S.S.G. § 3B1.2 because he was a minimal or minor participant in the crime.

The district court disagreed. After two sentencing hearings, it concluded that Guerrero-Deleon had not "met the burden of proof by a preponderance of the evidence that he is less culpable, let alone substantially less culpable" than Suazo-Molina. J.A. 58. The district court consequently sentenced Guerrero-Deleon to 53 months in prison. It arrived at that sentence by commencing at the low end of the guidelines range and subtracting four months for the time Guerrero-Deleon had already spent in custody.

II.

Guerrero-Deleon challenges the district court's decision to deny him a section 3B1.2 minor-role reduction.[2] He argues that this decision was in error because "Suazo-

---

[1] 21 U.S.C. § 841(b)(1)(A) provides a ten-year statutory minimum for Guerrero-Deleon's offense of conviction. But because Guerrero-Deleon satisfied the criteria in 18 U.S.C. § 3553(f)(1)-(5), the presentence report instructed that the district court "shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence." J.A. 81; *see* U.S.S.G. § 5C1.2(a).

[2] Guerrero-Deleon does not appear to challenge the district court's decision to deny him a minimal-role reduction.

3

Molina was the more culpable defendant" and couriers like Guerrero-Deleon are "typically the least culpable" participants in drug conspiracies.

We are not persuaded. Section 3B1.2 of the guidelines allows for a downward adjustment in offense level "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A). The size of the adjustment is directly proportional to the participant's culpability. Minimal participants "who are plainly among the least culpable of those involved" are entitled to a four-level decrease. *Id.* § 3B1.2(a) & cmt. n.4. Minor participants who are "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal," are entitled to a two-level decrease. *Id.* § 3B1.2(b) & cmt. n.5. Participants whose role was more than minimal but less than minor are entitled to a three-level decrease. *Id.* § 3B1.2.

The guidelines commentary emphasizes that the section 3B1.2 analysis "is heavily dependent upon the facts of the particular case." *Id.* § 3B1.2 cmt. n.3(C). Courts must consider "the totality of the circumstances," including the defendant's understanding of the criminal activity, the defendant's role in planning it, the degree to which the defendant made decisions, the extent of the defendant's participation, and the benefit the defendant stood to gain. *Id.* A mitigating-role reduction is a classic sentencing determination that has been entrusted to the district courts. This court reviews their factual findings for clear error. *See United States v. Powell*, 680 F.3d 350, 359 (4th Cir. 2012).

Guerrero-Deleon's assertion that the district court clearly erred in denying him a minor-role reduction is flawed for two reasons. First, Guerrero-Deleon suggests that he was a minor participant because Suazo-Molina, who initiated and arranged the transaction, was more culpable than he was. But a mitigating-role reduction "is not automatically awarded to the least culpable conspirator." *United States v. Hassan*, 742 F.3d 104, 150 (4th Cir. 2014). Such reductions are available only to those conspirators who can prove by a preponderance of the evidence that they are "substantially less culpable" than their average coconspirator. U.S.S.G. § 3B1.2 cmt. n.3(A); *see United States v. Pratt*, 239 F.3d 640, 645 (4th Cir. 2001). Many conspirators may be less culpable than their coconspirators without being substantially so. It all turns on the particular facts at hand.

Second, Guerrero-Deleon stresses that he was nothing more than a courier. But there is no per se courier entitlement to section 3B1.2 minor-role reductions. The relevant question is not whether couriers by definition are minor participants but rather whether a given courier played a minor role relative to his coconspirators. Indeed, couriers are often essential to drug conspiracies. They participate directly in the exchange of drugs for money and are the means by which those drugs move from distributor to customer. *See United States v. Self*, 681 F.3d 190, 201 (3d Cir. 2012). While this "essential or indispensable role . . . is not determinative" of the section 3B1.2 inquiry, *see* U.S.S.G. § 3B1.2 cmt. n.3(C), it is a factor to be considered in the broader section 3B1.2 calculus. *See United States v. Bello-Sanchez*, 872 F.3d 260, 264 (5th Cir. 2017); *United States v. Morosco*, 822 F.3d 1, 24 (1st Cir. 2016).

The district court did not clearly err in denying Guerrero-Deleon a minor-role reduction. Even assuming he was merely a courier, Guerrero-Deleon knew he was participating in a drug transaction. He admitted that he was specifically recruited for and agreed to go on a drug delivery. And he knew from the conversation he had overheard that the conspiracy extended beyond just himself and Suazo-Molina to at least two other men from Texas. Guerrero-Deleon's "understanding of the scope, structure and activities of the conspiracy" indicates that his role was more than merely minor. *United States v. Reavis*, 48 F.3d 763, 769 (4th Cir. 1995); *see* U.S.S.G. § 3B1.2 cmt. n.3(C)(i) (listing as a factor to be considered "the degree to which the defendant understood the scope and structure of the criminal activity"); *Pratt*, 239 F.3d at 646 (considering the defendant's knowledge of drugs in the car in affirming the denial of a section 3B1.2 reduction).

The quantity of drugs involved in the transaction, the value of those drugs, and the profit Guerrero-Deleon stood to reap further support the district court's determination. *See United States v. Kiulin*, 360 F.3d 456, 463 (4th Cir. 2004) (noting that a "substantial amount of ecstasy" was involved and that the defendant claimed to have "been paid well for [his] efforts"); *United States v. Cruickshank*, 837 F.3d 1182, 1193 (11th Cir. 2016) (listing as relevant factors, among others, "the 'amount of drugs, fair market value of drugs, [and] amount of money to be paid to the courier'" (quoting *United States v. De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc))). The transaction in this case involved two pounds of methamphetamine valued at $18,500. Guerrero-Deleon told law enforcement that he expected to pocket $1000 for his participation in the transaction. That is a significant amount of methamphetamine and considerable compensation. Taken

6

together, they support the district court's determination that Guerrero-Deleon was not a minor participant.

Having considered the evidence, the district court did not clearly err in concluding that Guerrero-Deleon had failed to prove by a preponderance of the evidence that he deserved a minor-role reduction pursuant to section 3B1.2. We decline to disturb that determination.

III.

For the foregoing reasons, Guerrero-Deleon's sentence is

*AFFIRMED*.